## Commonwealth *v.* May, Appellant.

*Criminal law—Obtaining money under false pretenses—Misrepresentation as to financial condition—Check.*

A conviction for obtaining money under false pretenses will be sustained, where the evidence upon which the verdict was based, shows that the defendant represented to the prosecutor that he and his partner were owners of real estate and in good financial condition, that on the faith of such representations the prosecutor sold to the defendant two cows, that subsequently he accepted a check of the defendant and partner in payment, and that when he deposited it two weeks later there were no funds to pay it.

In such a case the defendant cannot claim that the prosecutor's delay in presenting the check caused the loss, if the trial judge leaves it to the jury to determine whether the delay was negligence under the circumstances.

Where, in such a case, the trial judge admits in evidence a statement of the daily balances of the defendant and his partner in the bank on which the check was drawn, the judge cannot be convicted of error because he refused to admit in evidence a number of paid checks during the period in controversy.

Argued Feb. 29, 1916. Appeal, No. 111, April T., 1916, by defendant, from judgment of Q. S. Lawrence Co., Dec. Sessions, 1915, No. 24, on verdict of guilty in case of Commonwealth v. Louis May. Before ORLADY,

P. J., HENDERSON, HEAD, KEPHART, TREXLER and WIL-
LIAMS, JJ. Affirmed.

Indictment for obtaining money under false pretenses.
Before WILLIAM E. PORTER, P. J.

The facts are stated in the opinion of the Superior
Court.

At the trial when the cashier of the Union National
Bank of Newcastle, was on the stand, the following offer
was made:

"Exhibit B. Deft., shown witness, being checks that
have been paid during the month of August by the firm
of Blum & May. Offered for the purpose of showing
that there was an account kept by this firm and they
were doing a banking business at the Union National
Bank and carried an account sufficient to pay all checks
that were drawn during the month of August and that
all the checks, excepting this one, were presented and
paid. And this for the purpose of showing that there
was no intent of any of the parties to this transaction to
defraud anybody, and for the purpose of showing that
the prosecutor was guilty of neglect in not presenting
his check for payment.

Objected to as the checks would be incompetent in
this case to sustain the offer and would be immaterial
to the charge in this case.

By the Court: We will sustain the objection and seal
a bill for the defendant. The checks paid would not be
any indication of the money in the bank. The daily bal-
ance sheet would be the evidence of that. (2)

The court charged in part as follows:

["Now, the prosecutor says that at the time the cows
were taken away that he parted with them believing the
statement of Mr. May to the effect that he and Blum had
purchased the McKee property and that they were finan-
cially good. He says that it was upon that representa-
tion and his belief in that representation that induced

him to part with his property some few days later. This transaction we have spoken about occurred on the 6th day of August."]    (4)

["Mr. Everett says that he was busily engaged upon his farm, that the season was backward, that he had difficulty in getting up his hay and that there was some down and he did not get to New Castle to get the check cashed, but finally mailed it to the bank. And it appears that the check was presented for payment by the bank on the 21st day of August. I do not know whether Mr. Everett mailed the check on that day. He lived in the country some six miles from the city and mailed it to the bank and the bank received it and presented it for payment on the 21st. Whether Mr. Everett mailed it on that day or a day or two previous to that does not appear in the evidence. But it was fifteen days from the time the check was given until it was presented for payment; two weeks and one day. And as to whether it was mailed at an earlier date or not we are not informed in the testimony in the case. Now, the prosecutor says he was busily engaged about his farm during that time and consequently did not present his check at an earlier date. When the check was presented on the 21st day of August it appeared that the bank refused payment, and that it was presented again I believe on the 25th and 31st days of August and on none of these days was the check paid and it has never been paid and is not paid at the present time."]    (5)

["Then we reached the question as to whether or not the prosecutor was at fault in not presenting the check promptly for payment. This is a matter, gentlemen of the jury, upon which we can only say to you that the prosecutor would not be warranted in unreasonably delaying the presentation of the check for payment. That is, he must be reasonably diligent in presenting his check, not that he would be required to come immediately to town and present it, but whether or not under all the circumstances, as they appear in the evidence, was he

reasonably diligent in presenting his check for payment. In other words, did he do the thing that an ordinarily prudent and careful man would do under the circumstances? Now, the evidence here is that this prosecutor is a farmer residing some six miles or more out in the country on a farm. That he was working the farm and at this particular time there was considerable rain, delaying him in his work, that he had some hay down and that because of that he did not get to town as was his usual custom of coming once each week. But that some other day, I believe it was the 21st or before that date, he mailed the check to his banker here in New Castle and had it presented by this bank for payment on the bank of the makers of the check. Now, was he reasonably diligent? Did he exercise the care that an ordinarily prudent person would have done under the circumstances? If he did, and the jury is satisfied under the evidence that he exercised such care, then the defendant could not avail himself of the allegation that the prosecutor was negligent or careless in presenting the check. If he was not reasonably diligent, and by reason of carelessness neglected it until the funds of the maker of the check had been depleted, either designedly or inadvertently, and he was careless about this matter and it was his own fault that he failed to get the money, then such fault should not be charged to the defendant. Now, this becomes a question wholly for you to determine, whether or not the prosecutor was reasonably diligent in presenting the check for payment."]   (6)

Verdict of guilty upon which judgment of sentence was passed.

*Error assigned* was (2) ruling on evidence quoting the bill of exceptions; (4, 5, 6) above instructions quoting them.

*Charles E. Mehard,* with him *M. L. Rabinovitz* and *William McElwee, Jr.,* for appellant.—The representa-

tion must be in regard to something that would tend to induce the party to extend credit. The person who parts with his property cannot arbitrarily say that he relied on representations in regard to an immaterial matter: Com. v. Mullen, 4 D. R. 656; Com. v. Getler, 19 Pa. C. C. R. 248; Com. v. Schissler, 9 Philadelphia 587.

If the defendant is guilty of crime, he must have committed some overt act making him so. The negligence or lack of negligence on the part of the prosecutor could not make the defendant a criminal.

*Clyde V. Ailey,* District Attorney, for appellee.—The conviction was proper: Com. v. Wallace, 114 Pa. 405; Com. v. Schmunk, 22 Pa. Superior Ct. 348; Com. v. Hickey, 1 Clark 436.

If the prosecutor was induced to part with his cows because of the alleged representations, though the check may also in part have influenced him, then a conviction was proper, if the evidence satisfied the jury, beyond a reasonable doubt, which it did, that the representations were false, and known by the defendant to be false, and made with intent to cheat and defraud the prosecutor: Commonwealth v. Wallace, 114 Pa. 405; Commonwealth v. Sebring, 1 Dist. Rep. 163; Commonwealth v. Yunginger, 21 Dist. Rep. 729.

OPINION BY HEAD, J., July 18, 1916:

The defendant was convicted under an indictment which charged that, by falsely pretending and representing he was a part owner of certain real estate in the City of New Castle and a partner in the business conducted therein, he cheated and defrauded the prosecutor of certain valuable personal property. More than once in the course of the general charge, as well as in the answers to the points presented on behalf of the defendant, the learned trial judge correctly and clearly explained to the jury the nature of the offense charged and the essential ingredients necessarily entering into it. The jury were

instructed that before they could convict they must be able to find from the evidence the existence of each and every one of the elements referred to. If the testimony delivered by the prosecutor and his wife was accepted by the jury as true and convincing, there was ample support for the verdict rendered.

The testimony just referred to tended to prove the defendant came to the farm of the prosecutor situate about six miles from the City of New Castle. He was an entire stranger. He represented he and his partner Blum were the owners of certain real property in the city which they had purchased from one McKee; that the said partnership conducted a butcher's business in that property; that he was of good financial standing and able and willing to pay for what he bought. Relying on these representations, the prosecutor sold to him two cows for the price of ninety dollars. The defendant paid two dollars on account of the purchase-money and stated he would send for the cows the following week and at that time would pay or cause to be paid the balance due. At about the date named two young men appeared, and one of them stated they had come for the cattle which his father had bought. In payment of the balance of the purchase-price they tendered him a check on a bank in New Castle signed in the name of May & Blum and took the cattle away. The prosecutor, accepting as true the statement made by the defendant, did not present the check for payment until about two weeks after he received it and payment was then refused because of lack of funds. Whether the check tendered and accepted was signed before the parties met on the day the cows were delivered or at the farm, was unimportant in determining the question of the guilt or innocence of defendant. A careful examination of the entire charge of the learned trial judge convinces us it was sound in its exposition of the legal principles involved and free from any error that could be harmful to the defendant. The third, fourth, fifth and sixth assignments of error complaining of various portions of the said charge are overruled.

It was contended by the defendant that at the time the check was given it was perfectly good and during a number of days thereafter would have been paid on presentation. It was therefore, it was argued, through the negligence of the prosecutor himself his loss occurred. The learned trial judge gave to the defendant the benefit of the contention advanced in this respect, as the following · excerpt from the charge will show. "Now was he (the prosecutor) reasonably diligent? Did he exercise the care that an ordinarily prudent person would have done under the circumstances?......If he was not reasonably diligent, and by reason of carelessness neglected it until the funds of the maker of the check had become depleted, either designedly or inadvertently, and it was his own fault that he failed to get the money, then such fault should not be charged to the defendant." This instruction was as favorable to the defendant as he had any right to expect because it failed to call to the jury's attention the possible and probable effect on the mind and conduct of the prosecutor of his acceptance of the false and fraudulent statement of the defendant.

For·the purpose of establishing support for the contention of the defendant, the learned trial judge permitted him to offer in evidence, as part of the testimony of the bank cashier, a statement of the daily balances shown by the account of May & Blum in the bank on which the check was drawn. He refused, however, the offer of a number of paid checks during the period in controversy for the reason that such checks had no evidential value and did not tend to establish, at least by the best evidence, the fact sought to be proven. This was manifestly true. Daily deposits of small sums might warrant the payment of a number of checks and yet leave unproven the main question in controversy. The statement of the daily balances referred to was the best evidence on the subject and the defendant could not have been harmed by the rejection of the offer of the paid checks. The second assignment is overruled.

The defendant's points, except the one asking for a binding direction, were all affirmed, and we find nothing in the remarks made by the learned trial judge as a part of his answers that qualified or diminished the force of the affirmance, and the assignments complaining of them are without merit.   Finally, the record discloses no abuse of the discretion vested in the learned trial judge in refusing to grant a new trial, and there would be no warrant for our interference with the judgment on that account.

The judgment is affirmed and the record remitted to the court below with direction to have the sentence carried into execution.